IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:25-CR-00028-M

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        ORDER

JILLIAN LEANNAH SCOTT,

    Defendant.

On May 6, 2025, Defendant pled guilty to a criminal information charging her with one count of bank fraud and one count of misuse of a social security number. DE 1 & 12. About four months later, evidently sometime in September, Defendant and her boyfriend conceived a child. *See generally* DE 32, 35, 36, & 41. On October 10, 2025, the court sentenced Defendant to a 21-month term of imprisonment and a 3-year term of supervised release. DE 28. On October 15, 2025, Defendant's OB/GYN "confirmed" that Defendant "was approximately 9 weeks pregnant." DE 36 at 4. Six and a half months later, on April 27, 2026, the court learned for the first time that Defendant was pregnant when she moved for compassionate release. DE 32. On May 5, 2026, Defendant was induced and had her child. DE 39 41. Pending before the court are Defendant's two *pro se* Motions for Compassionate Release, DE 32 & 35, Defendant's Motion to Expedite Ruling, DE 38, and both parties' Motions to Seal, DE 37, 40, & 44. For the reasons that follow, Defendant's Motions for Compassionate Release are DENIED; Defendant's Motion to Expedite Ruling is DENIED AS MOOT; and both parties' Motions to Seal are GRANTED.

## I. Defendant's Motion for Compassionate Release

On April 27, 2026, Defendant filed a *pro se* Motion for Compassionate Release. DE 32. Two days later, on April 29, Defendant filed a second *pro se* Motion for Compassionate Release. DE 35. The next day, on April 30, Defendant's counsel, Laura Wasco, filed a memorandum in support of Defendant's Motions and several attached exhibits. DE 36. Six days later, on May 5, Ms. Wasco filed a further supplement to her Memorandum in support of Defendant's Motions. DE 39. Each of these documents raise essentially the same argument: Defendant's pregnancy and motherhood create extraordinary and compelling conditions that would justify Defendant's early release from her term of imprisonment. As such, the court will address them—and the argument they jointly raise—together.

On May 6, following the court's order directing the United States to respond to Defendant's Motions, the United States responded in opposition. DE 41. Thus, this matter is ripe for consideration.

### A. Brief Factual and Procedural History

From 2016 to 2021, Defendant worked as a customer call representative for the State Employee's Credit Union (SECU). DE 19 ¶ 7. Because Defendant was tasked with answering customers' questions about their SECU accounts, Defendant had access to SECU members' personal identifying information (PII) and account information. DE 19 ¶ 7. Beginning on November 1, 2019, Defendant used that access to perpetuate fraud. DE 19 ¶ 8. She accessed the bank accounts of 32 SECU members on several hundred occasions in furtherance of a scheme where Defendant used her victim's accounts to create fraudulent PayPal, CashApp, and BillPay accounts, from which she sent herself money. DE 19 ¶ 8. Based on her fraudulent transactions,

2

Defendant intended her victims a loss of $85,437.37 and caused them an actual loss of $25,764.37. DE 19 ¶ 8.

At Defendant's sentencing, the court calculated Defendant's guidelines range as follows; based on an offense level of 16 and a criminal history category of I, the guidelines recommend a term of imprisonment between 21 and 27 months. DE 19 ¶ 51. Defendant was also required under 18 U.S.C. § 3663A to pay restitution in the amount of $25,764.37. Defendant showed up at her sentencing with a check in that amount, ready to pay her restitution, and asked the court to consider a non-carceral sentence or to vary downwards from the guidelines' range to a 366-day term of imprisonment. The court declined that request and instead sentenced Defendant to a 21-month term of imprisonment. As the above timeline indicates, shortly after her sentencing, Defendant's OB/GYN confirmed that Defendant was pregnant.

### B. Applicable Standards

Typically, a sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "Congress provided an exception to that general rule . . . which permits courts to reduce a sentence or permit immediate release based on extraordinary and compelling reasons warranting such relief." *United States v. Centeno-Morales*, 90 F.4th 274, 278 (4th Cir. 2024) (quoting 18 U.S.C. § 3582(c)) (cleaned up). Once, these requests could only come from the Director of the Federal Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (2002). Following the passage of the First Step Act, however, federal inmates were authorized to directly file motions for compassionate release once they "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [at] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*; *see also Centeno-Morales*, 90 F.4th at 279.

3

In considering these motions, a district court must conduct a two-step analysis. *Id.* First, the court must determine whether a defendant is eligible for a sentence reduction because he or she has demonstrated extraordinary and compelling reasons for release. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). Any potential sentence reduction must also be consistent with applicable policy statements issued by the United States Sentencing Commission, and the Commission has promulgated a non-exhaustive list of circumstances constituting acceptable "extraordinary and compelling" rationales. *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024); U.S.S.G. § 1B1.13(b). Because this list is non-exhaustive, a district court "has authority to consider any 'extraordinary and compelling reason' that a defendant might raise, regardless of the Sentencing Commission's pronouncements or . . . definitions." *United States v. Hall*, No. 09-CR-0520, 2024 WL 1485724, at *1 (D. Md. Apr. 5, 2024) (citing *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020)).

Second, if the court finds an extraordinary and compelling reason for a sentence modification, it must then evaluate the relevant § 3553(a) sentencing factors. *Centeno-Morales*, 90 F.4th at 279. The defendant bears the burden of showing why the § 3553(a) factors justify a modified sentence, *id.*, and a court may deny the defendant's motion based on its own analysis of the factors, even if an extraordinary and compelling circumstance exists, *see United States v. Kibble*, 992 F.3d 326, 331–32 (4th Cir. 2021).

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), the defendant must first exhaust the administrative process established by the BOP or allow "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022) (clarifying that a "defendant is not required to exhaust his administrative remedies with the BOP *at all* beyond

4

making the initial request for compassionate release"). The Fourth Circuit has additionally held "that the statute's requirement that a defendant satisfy the threshold requirement before filing a motion in the district court is a non-jurisdictional claim-processing rule." *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). And as such, "it may be waived or forfeited." *Id*. Inasmuch as the United States fails to assert that the Defendant has not exhausted his administrative remedies, the court declines to address that requirement. DE 41; *cf. United States v. May*, 855 F.3d 271, 275 (4th Cir. 2017) ("Because the government failed to raise this non-jurisdictional limitation below, it is waived on appeal."); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024) ("The government did not raise this issue below. . . . Thus, the government has waived the issue of exhaustion, and it is not a barrier to remand.").

## *C. Analysis*

Broadly, Defendant identifies two circumstances which she contends rise to the level of extraordinary and compelling: her pregnancy and looming motherhood. The court begins with Defendant's concerns regarding her pregnancy as a medical condition that merits early release. Those concerns are now moot. As explained above, Defendant filed her Motion on April 27, and the court learned of her pregnancy for the first time on May 1, when the motion was submitted to the court for review. In her Motion, Defendant explained that her due date was May 26, 2026. DE 32 at 1. That day, the court ordered the United States to respond to Defendant's Motion no later than May 6. However, as recent filings indicate, Defendant was induced and delivered her child on May 5. DE 41 at 1. Defendant was primarily concerned that, because she experienced a breech pregnancy, the BOP lacked adequate resources to manage the delivery of her child. However, Defendant has now delivered her child, and the court has received no communication from the parties indicating that her health has deteriorated or that new, non-standard post-partum conditions

5

have emerged which the BOP lacks the capacity to manage. As such, Defendant's pregnancy does not now, and did not then, offer extraordinary and compelling reasons to support her early release from a term of imprisonment. *See United States v. Johnson*, No. 21-20079, 2026 WL 1122607, at *2 (E.D. Mich. Apr. 24, 2026) ("Now that Defendant has given birth, whether her pregnancy was 'high risk' (which the parties dispute) is irrelevant for purposes of whether her sentence should be reduced.").

The birth of Defendant's newborn child raises a more challenging issue. Included in the policy statement's list of "Family Circumstance[s]" that could offer extraordinary and compelling rationale is "[t]he death or incapacitation of the caregiver of the defendant's minor child" is a "Family Circumstance." USSG 1B1.13(b)(3)(A). And the statement also contains a "catch-all" provision, noting that "any other circumstance or combination of circumstances that . . . are similar in gravity to those" specifically identified by the policy statement may offer extraordinary and compelling reasons for compassionate release. The recent birth of Defendant's child does not meet the first category. It appears that both the child's grandmother and father are available caregivers, and the child's grandmother intends to serve as its primary caregiver. DE 42-2. Defendant has not offered any reason to believe that is no longer so. *See* DE 36 & 39. Instead, this is a matter for the catch-all provision: whether the birth of defendant's newborn child presents a reason "similar in gravity" to those specifically identified in the policy statement. *See* USSG 1B1.13(b)(3)(A).

Relevant to the court's consideration, the BOP recognizes the wisdom in allowing mothers to be with their newborn children during the formative early period in an infant's life. As such, it maintains two programs to allow for new mother to spend between three and thirty months of their term of imprisonment with their child: the Mother & Infants Nurturing Together ("MINT")

6

program and the Residential Parenting Program ("RPP"). DE 41 at 7. Through MINT, a pregnant female offender may be transferred to a residential reentry center ("RRC") during the last two months of pregnancy and remains at the RRC for at least three months after birth to bond with her baby before returning to her designated BOP institution. DE 41 at 7. Alternatively, the RPP program is offered to pregnant female offenders and allows these inmates to reside with their baby after birth in a supervised environment for up to 30 months. DE 41 at 7.

Based on the court's review of other district court's orders, it appears that district courts have struggled with whether the birth of a child should *de facto* qualify a recent mother for compassionate release. On one end of the spectrum, a court in the Southern District of California has found that it does, even taking into account the availability of MINT, writing "that this separation three months after the newborn's birth is an extraordinary and compelling reason justifying a sentence reduction." *United States v. Rodriguez*, No. 19-CR-4693-GPC, 2023 WL 1486147, at *4 (S.D. Cal. Feb. 2, 2023). That court further explained that any "[s]eparation of a newborn child from their mother is an extreme measure that should occur rarely," and noted that mothers enjoy "numerous health benefits associated with breastfeeding," while newborn children "potentially face a myriad of health consequences" without breastfeeding. *Id.* Those are sound reasons, and Defendant echoes them in her filings. *See, e.g.,* DE 39 at 3 ("Ms. Scott is the primary caretaker for her unborn child, and she plans to breastfeed her child to maximize health benefits to her son and herself.").

However, not all courts have held that an incarcerated mother's impending separation from her newborn child is necessarily an extraordinary and compelling reason for compassionate release. For example, a court in the Eastern District of Michigan has distinguished *Rodriguez* to find that a defendant's "inability to continue breastfeeding after the birth of her child is [not] an

7

'extraordinary and compelling reason' for a reduction in her sentence." *Johnson*, 2026 WL 1122607, at *2. In particular, the *Johnson* court explained that, unlike in *Rodriguez* (and unlike in this case), it "was aware that [the] [d]efendant was five months pregnant at her sentencing and it was discussed extensively, given that [she] had violated her supervised release by using drugs during her pregnancy on multiple occasions." *Id; see also United States v. Tarver*, No. 1:20-CR-731, 2024 WL 3675818, at *4 (N.D. Ohio Aug. 6, 2024) ("Also, Defendant got pregnant after she plead guilty and while knowing her sentencing hearing was set for September 18, 2023, and she was able to be with her newborn for six weeks after giving birth, making this case distinguishable from [*Rodriguez*].").

To the extent these cases can be seen to illustrate a spectrum, Defendant's case falls somewhere in the middle. As has been previously discussed, the court was not aware of Defendant's pregnancy at her sentencing; indeed, she contends that she, herself, was not aware of it. As such, the court did not take Defendant's pregnancy or the birth of Defendant's child into account when fashioning her sentence. But unlike the Defendant in *Rodriguez*, who apparently accepted placement in MINT or a similar program, *see Rodriguez*, 2023 WL 1486147, at *4 ("[S]eparation three months after the newborn's birth is an extraordinary and compelling reason."), Defendant has turned down her placement in both MINT and RPP. *See* DE 42-3 ("[Defendant's] Conditional Transition to Community Date is October 24, 2026, . . . [a]s such, she does not want to participate in MINT or RPP placement."). In other words, Defendant has turned down placement in the BOP programs that would enable her to enjoy the health benefits associated with breast-feeding and to be near her child during the early months of its life.

That decision, of course, remains Defendant's. But decisions have consequences. And Defendant's decision to willingly forgo the health benefits associated with breastfeeding

8

nonetheless minimizes her argument that the deprivation of those benefits is a circumstance so extraordinary and compelling as to justify early release. *Cf. United States v. Tarver*, No. 1:20-CR-731, 2024 WL 3675818, at \*4 (N.D. Ohio Aug. 6, 2024) ("While Defendant may be depressed because she is in prison and away from . . . her newborn, that would be normal for most mothers and is not an 'extraordinary and compelling' circumstance. Moreover, [Defendant] has been offered counseling . . . , but . . . she has not accepted that . . . help."). Accordingly, the court does not find that the birth of Defendant's child and the associated difficulties she will face while imprisoned constitute extraordinary and compelling circumstances.

Because the court has found that Defendant does not face extraordinary and compelling circumstances, it need not provide any analysis of the 3553(a) factors. *Cf. Centeno-Morales*, 90 F.4th at 279. It will suffice to say this. Defendant engaged in a complex fraud scheme that involved the misuse of PII to enable hundreds of fraudulent transfers. Based on the court's own review of the facts in the case, the United States could have sought a far more aggressive set of charges which would have obligated the court to impose consecutive mandatory minimum sentences. *See* 18 U.S.C. § 1028A. Instead, Defendant pled guilty to the charges set out in the information and fully paid her restitution, and the court imposed a fair, though lenient, sentence of 21 months. As the court explained at Defendant's sentencing, this is the sentence sufficient but not greater than necessary in this case.

### 2. Defendant's Motion for Expedited Ruling

Defendant has also moved the court to rule on her request for compassionate release in an expedited fashion. DE 38. In light of today's ruling, that motion is DENIED AS MOOT.

9

## 3. Both Parties' Motions to Seal

Finally, as the pleadings in this litigation contain Defendant's confidential medical information, both parties have sought to seal various sensitive filings. DE 37, 40, & 44. Pursuant to Fed. R. Crim. P. 49.1(d) and Local Criminal Rule 55.2, and based on information set forth in the proposed sealed documents, those motions are GRANTED. The Clerk of the Court shall maintain under seal the documents at DE 36, 39, 41, 42, and 43 until further order of the court.

SO ORDERED this __12th__ day of May, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

10